Good morning and welcome to the Ninth Circuit. I am Bridget Beatty and I am very pleased to be joined by my colleagues Richard Coleman and Ken Lee here this morning. Four of the cases on the calendar have been submitted on the briefs and we will be hearing argument in two cases. First, VIP Mortgage v. Jennifer Gates. And counsel, whenever you are ready, please proceed. May it please the Court. And welcome back, Judge Beatty. Good morning, Your Honor. My name is Jeff Topol and thank you for the opportunity to present argument on behalf of Appellant VIP Mortgage in this matter. I would like to reserve three minutes for rebuttal. Please watch the clock. Thank you. Your Honors, I would be doing a disservice to my clients as well as the Court if I did not start by acknowledging that we fully appreciate that the standard that applies under the FAA, the Federal Arbitration Act, is a high one. I am not going to even attempt to sidestep that reality as I fully expect a hair opposing counsel to tell you that the standard to vacate an arbitration under the FAA is exceedingly or exceptionally high and how rarely Federal Courts vacate under the FAA. While both of those may be true, of course, what is equally true and indisputable is that the standard under Section 10A of the FAA for the Federal Court's confirmation or vacation of an arbitration award is not absolute. For if it was absolute, I likely would not be given the opportunity to stand here before you today. Congress created four carefully crafted... May I interrupt you? Yes, absolutely. Could you jump into the issue with regard to the proof on the overtime? Because it seems to me that your client as the employer basically did not keep adequate records and yet your client is now challenging the arbitrator's decision with regard to the overtime which the plaintiff seems to have pretty well substantiated with corroborating information. So given the highly differential standard that you acknowledge applies here, you are not asking us to re-weigh the evidence, are you? I am not. What I am asking, Your Honor, and I appreciate you starting there and I will start on that basis, is not re-weigh the evidence but based on the arbitrator's own factual determinations, the conclusions that she reached based on that evidence are completely irrational and exceed... Well, you say that but you are representing a party that offered no evidence because it did not keep adequate records. So I am having a very difficult time accepting your premise or your conclusion that she overstepped her authority in the face of a plaintiff who did attempt to substantiate her overtime. And it's a wonderful question, Your Honor, and attempted to... I am anxious for a wonderful answer. I appreciate that. Well, I will give you one. Okay. Well, what I want to note is some of the facts that were accepted and were not disputed in this case, one of which is that she did not keep contemporaneous records. She was under a contractual obligation... Well, she did provide contemporaneous records in the sense that there are computer entries that showed when she signed in, when she was last active. I mean, the arbitrator had some evidence before her. Your argument is that it's too thin. It not only... She did have some evidence before her in order to try and make a determination of what the approximate amount of overtime was. Absolutely. And what the evidence showed, and it's an excellent point, and I am going to get into that. Of course, to your point under Mount Clemens, which is the underlying Supreme Court case that addresses off-the-work hours, to meet her burden under that standard, Mount Clemens, Pelley submitted the overtime spreadsheet that is, of course, the focus of much of our discussion, which she created for the arbitration. There is no doubt about that. And as you noted, it addressed the first and the last. And she acknowledged that, Darian, she being the appellee. And as a result of that, it created these extraordinary results that she worked over 12 hours on approximately 205 days, that she worked over 14 hours on approximately 51 days, that she worked over 16 hours or two-thirds of the workday on approximately 16 days. Incredibly, that she worked 18 hours or three-fourths... But the arbitrator did make adjustments and reduced the amount of her claim. With all due respect, you're making a great argument. You've got some tough facts here, and one of the toughest facts you have to overcome is that, as I read the record, the client basically told his employees, don't log more than 40 hours in a workweek, even though the employer obviously knew she was working overtime because they expected her to handle things on weekends and at night and that sort of thing. And again, I'm finding it's a little hard for me to be sympathetic to your client's cause in the face of bad facts like that. Well, Your Honor, what I really... Again, all very good points. I want to focus on, in particular, one of the arbitrator's findings in the case. Well, can I ask you to do that in the context of the standard that applies? Because it seems to me that you're asking us to re-weigh the facts that were presented to the arbitrator when she made her award, which, under the FAA, we're not doing. You had argued under the fourth exception that this was manifest disregard for the law, the arbitrator exceeded their authority. This is the part of the statute that we can use to set aside the arbitration award. But what you're arguing are factual disputes about the sufficiency of the evidence and how much the plaintiff worked and how she documented that. So assuming you're right on all of that, I still don't know how we can set aside the arbitration award. Well, the arbitrator herself found, and this is where I really think that the employer negated the reasonableness. First of all, she found that much of the... Even though she determined that the appellee had met her burden by producing the overtime spreadsheet, she also found that that overtime spreadsheet had over 200 inaccuracies. So that the information that the appellee provided was inaccurate. That's a factual determination that we're not disputing. She also determined that at the hearing, VIP, quote, at the hearing, V pointed out a number of instances not accounting foreign claimants reconstruction of her hours. These include medical appointments, appointments at the Mexican consulate, a country war trip to a resort in Mexico, the weekend claimant attended her daughter's wedding, all these different things. And as a result of that, she said that the spreadsheet resulted in an overstatement of her actual hours, which is, again, a factual determination, yet she relied on that overtime to award her thousands of hours, which without... After making adjustments to respond to your objections to excessive billing, if I can use that term. With that said, what she didn't do and she acknowledged was to do a day-to-day analysis. Even though she found that the spreadsheet was unreliable and that it was for 205 days... I read that argument in your brief, but the arbitrator does go through, at least maybe not every day that she worked, but she did look at individual days in making those adjustments. So how can you say that she didn't do a day-by-day analysis? Well, she did that with respect to the weekends, on-call weekends, which was a separate... With respect to the daily overtime, she specifically said it would have been impractical to do that. But she also found that... But hasn't the Ninth Circuit said in those cases that a good faith effort to approximate the amount of the time worked is sufficient to meet the legal standards? Those estimations were found by the arbitrator themselves to be highly suspect and unreliable, yet she relied on them. But then she made adjustments in order to account for that. So I'm trying to figure out where's the beef here, right? Other than asking us to re-weigh the facts and come out the other way. But she didn't make adjustments on, even though she found inaccuracies on the days, because she didn't look at those individual days. She found she did make adjustments on certain days. On individual days. Right. On certain individual days in which she found that the evidence did not show, but she didn't go through each individual day. How could she if your client didn't provide any reliable information to rebut the inferences that she was asking the arbitrator to make based on the evidence that she produced? Well, in some cases, of course, we did provide. And even in some of those cases in which we did provide evidence, of course, as you noted, she did make reductions. She did not make deductions in all those places. Can you address the counterclaim fees? You point out that there was a settlement and the parties agreed to bear their own costs. But did you actually remind the arbitrator that you had that provision saying each party will bear its own costs? Absolutely. In response to our request for the... Can you tell me that? Because I was trying to look for it in the record and I didn't see it. I do not have that on the top of my head. I apologize, Your Honor. What would be the difference in the award? Basically, how much are we talking about with respect to the fees on the counterclaim? Several thousand, not a small portion, but certainly 10,000. I don't know the exact amount, but 10,000 to 20,000 is what I would say. But again, to your point, in this case, we did object. We did say that that's not covered. With respect to that instance, of course, not only does it violate the court's own order in which she dismisses counterclaims with each party to bear its own fees, but it also violates the limited rights or authority under the arbitration for the arbitrator to award those fees. Because under that provision, the arbitrator was only permitted to award fees, quote, statutory claims for which attorney sees were expressly recoverable. Those were not only were they counterclaims, which were settled well in advance. The statute provides prevailing party gets fees, right? Under the FLSA. The counterclaims were not related. You concede that you didn't remind the arbitrator at the end of the case that she had entered a previous order several months before approving the settlement in which each party had agreed to bear their own cost. Your Honor, to be honest with you, I don't remember. I raised the objection. I looked at the record Judge Lee did and I didn't see where anybody reminded the arbitrator that she. OK, and I what I did say was that these were for unrelated counterclaims. I don't know that I I don't recall that I said. Yeah, I didn't find anything that said excuse me, Your Honor, but there's this order here that that's your signature on it. Nonetheless, your point. Nonetheless, either way, it would certainly from our perspective still violate the arbitration provision because you awarded fees for which she would. We would have to find that to be what a manifest abuse of justice or whatever the standard or completely irrational, completely or exceeded exceeded her authority because she didn't have the authority. She had the authority to award attorneys fees. Now we're arguing over the amount of the award and the fact that she overlooked what you say is a key dispositive fact on at least the fees that had been incurred on the counterclaim. Well, I would say she didn't have the authority under the agreement to award those specific fees for which we did object to and point out that those are fees for the counterclaim. Can I ask you something else? You made an argument in your briefs that. The motion to vacate the award should have been viewed as a pleading and the Iqbal Twombly standard applied. What what difference would that make? What is the practical result if we were to if the district court were to view your motion in that light? And if we were to do so as well. First of all, I think based on the Twombly standard, of course, sufficiency of the pleadings. I do think here we pled three separate bases for why we believed the arbitration fee exceeded or the arbitrator exceeded her authority. So what are you suggesting when you file a motion to vacate the arbitration award? We look at it as if it's a pleading, like a complaint. If you've alleged enough, then there's discovery. Not necessarily discover, but the opportunity to brief and introduce. Well, why doesn't that happen in the context of the motion to vacate the response, the reply, and also at the same time their motion to affirm your response, their reply? I mean, there's all to dual track briefing going on. So I am puzzled as to what benefit you would gain if we were applying a well pleaded standard. The opportunity to fully brief and to introduce. But how did you not have that? Of the well, again, we I specifically asked the court. I again, I was as fleeting as you would say, but it makes no sense to treat this as a pleading. A pleading is just your allegations. You haven't had a discovery. So that's one thing here. You already know the facts. I mean, it's not everything's there in the arbitration records. It makes no sense to treat as a pleading. That's why such refers to as a motion because you have the facts. So we don't have to determine whether something's plausible or not. We have the facts in front of us or the arbitrator did. So we have in front of us. Well, and again, if that was if it was a motion to dismiss standard, though, those facts were in front of them and should have continued and we should have been given the opportunity to further break. So we've taken you down to just about 30 seconds. And I understand you wanted to reserve, I think, three minutes. But I'll give you a couple of minutes in rebuttal because we took you over time. OK, thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is James Weiler and I have the pleasure of representing the appellee in this matter, Jennifer Gates. This is an FLSA overtime case. Jennifer Gates was a loan officer who was instructed to input a block of eight hours in her time card every day for five days a week. And this started in 2016. In 2019, the mortgage industry entered into historical times for them. Mortgage rates were the lowest they had been maybe ever or certainly in decades. And as a result, everyone refinanced the loan. The housing market was booming. And so she was required to take on the extra duties to meet that demand while under the direction of her supervisor, demanding that she maintains the same level of customer service they had when they were doing a fraction of those loans. And as a result, she worked more than 40 hours. And at an arbitration hearing, we presented numerous witnesses. We presented phone logs. We presented Encompass records, which is the system that they use to input all of their loans, to track their loans. So you could see certain times that they logged, that an individual would log in or use that system. We input, we used emails. We used witness testimony. Across the board, all of the witnesses agreed we all entered eight hours each day for five days a week. We did not accurately record our time. And the VIP in the moment had no issue with that. And they had no issue reaping the benefits of all of their hard work. And now, after an arbitrator hears all this evidence, they're now taking issue with that. And they're claiming that the arbitrator, against the manifest weight of the evidence, made a decision that was wrong. And that couldn't be further from the truth. What if it is? Even if it is under the standard for an arbitration award, are they just asking us to weigh the evidence? Their point is that there were flaws and gaps in the evidence that Ms. Gates presented, dates she was out of the country, which would not be covered by the statute, vacations, medical appointments, a daughter's wedding, all of these sorts of things. So that I think that the point of their argument is that that means that the award was outside the arbitrator's authority, completely irrational, manifestly unjust because of the flaws in the evidence. How do you how do you respond to that? I would respond that they have mischaracterized the evidence that was at the hearing in the first place. And then on top of it, they are asking this panel for the first time, which they didn't necessarily do at the district court. I mean, the district court pleading was four sentences of conclusory statements of law. In fact, that the district court summarily dismissed. So they're raising all of these for the first time here. But the what they're asking is weigh the evidence. She got it wrong. They haven't set forth any case law that says an arbitrator has to do a day by day analysis. It's important to note that they did not do a day by day analysis. And every instance that they raised to challenge the credibility of the estimate, the arbitrator took into consideration. So for them to now say the arbitrator ignored their arguments is patently false. On top of it, the time that the arbitrator deducted for when for the period of time she was in Mexico, the arbitrator raised that argument sua sponte at the arbitration. That was not an affirmative defense raised in response to discovery. That was not an affirmative defense set forth in an answer to the complaint. The arbitrator went above and beyond to ensure that based upon the evidence presented to her, the correct decision was made. And so there is no merit to their arguments that she wasn't aware of the law. She cited it in her in her award. And then she applied it based upon what she actually witnessed, what she read, what she saw at the hearing itself. So every one of her decisions is based upon not only her foundation and understanding of the law, but also what happened at the hearing. And she had the opportunity to weigh that evidence, which this court should not be doing. This court should not be questioning the decisions she made about what evidence she should have cared more about, where where she should have placed the emphasis. That's not what we should be here today to discuss. Well, it seems to be. And thank you for your answer. But what seems to be a little more problematic is that the parties had a settlement agreement with respect to some claims, counterclaims. And that settlement agreement included provision that they would each bear their own costs and attorney's fees. And yet the arbitration award includes attorney's fees against VIP and in favor of Gates. And so that seems irreconcilable with with the party's agreement. And it's it seems as if it was clearly erroneous. I guess the question is, does it rise to the level of manifest injustice or clearly irreconcilable? So how do you defend her her award on fees that had been settled? Yeah. So a short answer. No, it does not. Longer answer. There was counterclaims that were brought that in response to our well, if you're going to maintain those counterclaims, we're going to bring an FLCA retaliation claim because those counterclaims are baseless. And so those counterclaims were dismissed on go because they didn't want to face a FLCA retaliation claim. So there wasn't this substantive work that went into the counterclaims that worked all the way up. To be honest, I'm not entirely sure what entries in there they're talking about because they didn't put those in the brief. So what which ones I would be happy to discuss the specific entry if they would have argued that, because my guess is some of the entries they may be talking about were entries that would say discussed discovery into our FLCA claim and then had an add on and also discussed dismissing the counterclaims. Right. So what would be the appropriate deduction there or not? The arbitrator had the opportunity to review every one of our time entries. She did make deductions. She deducted the hourly rate that we requested from 450 to 400. She did take deductions off of certain activities that we perform, whether they're paralegal or not. So to say she didn't perform any sort of analysis, didn't read the actual entry. There's nothing that has been put forth in the record by VIP to suggest that that was, in fact, the case. Was there a calculation? I asked your friend on the other side. He said he didn't know the amount. Did you do some sort of calculation? Has anybody figured out how much we're talking about for the fees for those particular fees that were settled? So I went back and looked and tried to find any entry that said in any way reference counterclaims or something like that. And I think I found about 10 hours. So four thousand dollars. And of those ones referencing it, I would be more than happy on a line by line to make an argument about how that wasn't just about the counterclaim. So but as I sit here, I don't know what entry we're talking about because they didn't argue. They didn't put it in the brief. They definitely didn't put it in the brief to the district court, which you would note that the record here at the appellate court is substantially greater than the record that was provided to the district court. And so I take it your big picture argument is your friend on the other side pinpointed certain hours that she allegedly didn't work and the arbitrator looked at it at least cut some hours and some amounts. I guess you request something like two hundred sixty thousand dollars in fees and the arbitrator awarded but two hundred twenty or something or around there. I mean, what's the drawing line to where we can say, no, it's a manifest, it's completely irrational or manifest disregard of law? I mean, if the arbitrator had only cut, you know. Say just five thousand dollars, would that be completely irrational? It looks like the arbitrator did take into account and acknowledge that maybe, you know, she didn't work these hours, but then the actual number is very, very small. Sure. My argument is I don't think that you can just make a bright line rule about a percentage. You know, you arbitrator receives a fee app if they don't cut at least 10 percent. It's a manifest, you know, manifest disregard of the evidence. I think it's on a line by line basis. Was that item, was that line item appropriate? Is that something that had to do with the prosecution of which was the successful prosecution of FLSA claims? Are under the statute under 216, are you entitled to recover that? The challenge I have in answering your question on the specifics of this case is I don't know what their argument is because they didn't make it. They just blanket said she did something wrong. With the with the fees, OK, which line items there is, there's a spreadsheet, there's entries, which entry and let's talk about the specific entries. Well, they didn't do that in the time to do that past. Well, it appeared to me that the arbitrator basically followed are the Hensley factors in the Ninth Circuit that we normally apply and reviewing district courts fee adjustments. You're correct, yes, though, and that's why we picked arbitrator Matheson, Michelle Matheson is a very well-respected attorney here and here in Phoenix and the state of Arizona, she's handled numerous FLSA claims and she demonstrated that knowledge throughout the entire process with the rulings on summary judgment, with her application of the Mount Clemens standard, with her rulings and decisions that she made in the hearing on what what could or couldn't, what arguments could or couldn't be made in the hearing. And then after she wrote 25 pages, which, as I recall, the district court observed was a pretty thorough analysis of the facts in this case contained in that 25 page award. Correct. And and what I think has kind of happened at the hearing happened at the district court and happened now here today is VIP wants the judges to step in and with their own eyes, look at look at evidence on their own, come up with their own arguments and make because what they put in their brief narrow tightrope, he acknowledges that we can't reweigh the facts, but he's asking us to look at the record and declare that it meets the statutory standard for setting aside an arbitration award under the FAA. That's that's really what he's asking us to do. Correct. And look at it broadly yourself. Not with citations to it, not with specific points, not with specific issues. So how can this panel or the appellee formulate appropriate arguments on specifics when we don't know what the specifics are? All we know is they're unhappy with it. They're very unhappy with it. They're so unhappy they filed a claim against Jennifer Gates in Superior Court and against her husband for conspiracy based on their testifying about They're very unhappy. I think you may be outside the record. And I apologize for that. On the counterclaim issue, if VIP had informed arbitrator explicitly and said, look, you approve this stipulation that says each party will bear its own cost and arbitrator still awarded the counterclaim attorney's fees, would that be a manifest disregard of law or completely irrational? For for the entries that were specifically and solely related to the defense of the counterclaim. Yeah, I'd have a hard time standing up here and telling you that that's that's following the law, that's abiding by the settlement contract. So, yeah, on those particular instances, yeah, I'd have a hard time saying like that's that's not a disregard for the law. Right. But in this particular instance, what were those entries? What were they? They didn't make that argument. So I don't think that the appellant has met their burden in this case. I don't think that they've demonstrated that there was this manifest disregard for the law. And to the contrary, the arbitrator made it very clear that she was thorough, that she reviewed the documents. She understood the law. So if we accept what you've just said, that you can't really defend awarding fees for those entries, but you don't know what they are. Would it be appropriate for us to remand it to the district court for them to consider sending it back to the arbitrator? I mean, I'm not sure what happens procedurally, but if there's a problem with some of the fees and you're acknowledging that, is there any remedy? I guess I would say I'm not necessarily acknowledging it because the argument hasn't been made. So I don't think it's appropriate to send it back. But if that were the issue, the amount of money that we're talking about, roughly four thousand dollars, four thousand dollars of attorney time or F.L.S.A. time, not F.L.S.A. time, attorney time. OK. All right. Less time than we're spending arguing about the issue. And that's not a good argument. And I apologize for being glib. But yeah, that, you know, if ultimately the court were to decide, hey, we want to we want to allow further briefing on that narrow issue, that specific issue. Then, Kurt, I wouldn't disagree with the court that you could remand it back on that narrow issue alone. I don't think it should be sent back to then restart the briefing process again on the issues where they're arguing about weighing evidence. She did make a more a more substantial reduction in your overall fee request, did she not, by reducing the hourly rate and cutting some of the hours? That is correct. She cut based off of what we submitted. She cut an amount way greater than what would potentially be at issue. So in the wash, it all comes out. Is that what you're saying? They come out further ahead. OK. And I guess last one, perhaps we we haven't touched on just to emphasize again, the petition for vacatur pursuant to the FFA section six should have been treated as a motion. The district court correctly treated as a motion. They should not have been afforded another opportunity to do discovery or submit additional briefing. They filed their initial petition. They chose to do it that way. We responded. And it wasn't until perhaps one sentence in an answer to the motion to confirm the award where they asked for additional time to brief. And I don't believe that that would be a sufficient motion to amend their pleading or to get additional briefing that would require this court to remand the matter. I see that my time has expired. Thank you very much, Your Honor. Thank you. Mr. Topol, you have two minutes. Thank you. And I don't know that I'll even take that much. Just a few things to note. I mean, the district court did note that it was a lengthy, well-reasoned opinion, but that does not, of course, preclude the fact that it could still exceed the arbitrator's authority. So the mere fact that it was well lengthy and potentially well-reasoned, we would argue differently. But you're not taking the position that the arbitrator had no authority to assess and award attorney's fees to the prevailing party. No, we are not. You're really challenging the error in, I'll call it double counting, including the $4,000 in fees that were essentially compromised in the settlement by directing that each party should bear its own cost. And really not double counting. That would be in addition to, because she did make deductions relating to other things that she felt was appropriate under Lodestar. This would be fees in addition to those. And to note, we did specifically identify. So for him to say that we didn't, we did in our response to the appellee's motion to, or attorney's fees, we specifically identified those entries that we're relating to. Unfortunately, I don't have that in front of me, or I'd be able to tell you how much those were. The last point that I want to make here is the arbitrator herself found in this case that the electronic data that the appellee provided was not an accurate reflection of the hours that she worked. And while the appellee noted that she made several deductions. And if we look at what the, she started at, Gates was originally saying she worked 5,960 hours of overtime. Our point is the arbitrator did not deduct based on the evidence that we presented on those days that she did not do a day by day analysis. Thank you. One question. Did you ask the arbitrator or did you tell the arbitrator how much she should reduce the attorney fees? Did you give an amount? I don't know if it was amount. My recollection was the entries we listed, so I don't know if it was an amount, but the entries were specific related to the counterclaim were listed. Thank you all, Your Honor. Thank you. Thank you for your arguments this morning. And this case is submitted.
judges: TALLMAN, BADE, LEE